IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ASHLEY DWAYNE MOORING, | § | |
| TDCJ #1336239, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1804 |
| | § | |
| NATHANIEL QUARTERMAN, Director, | § | |
| Texas Department of Criminal Justice - | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

State inmate Ashley Dwayne Mooring (TDCJ #1336239) has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging a state court felony conviction. He has filed a memorandum in support of his claims. (Doc. # 2). The respondent has filed a motion for summary judgment, arguing that Mooring's claims do not merit relief. (Doc. # 10). Mooring has filed a reply. (Doc. # 13). After considering all of the pleadings, the state court records, and the applicable law, the Court grants the respondent's motion and dismisses this case for reasons that follow.

## I.      BACKGROUND

A Brazos County grand jury returned an indictment against Mooring in cause number 05-01984-CRF-361, accusing him of burglary of a habitation owned by the complainant, Juan Chivalan, with intent to commit theft. Alternatively, the indictment accused Mooring of burglary of a habitation with intent to commit a felony other than theft, namely, robbery.

The State enhanced that indictment with allegations that Mooring had at least one prior felony conviction for burglary of a habitation.  After Mooring declined a plea bargain offer, the case was tried before a jury in the 361st District Court of Brazos County, Texas, where the State elected to proceed on the charge of burglary of a habitation with intent to commit robbery.

At trial, the complainant testified that Mooring barged into his apartment uninvited on January 11, 2005.  Mooring, whom the complainant did not know, reportedly acted in a nervous manner and demanded money.  The complainant attempted to pick up his phone and call the police, but Mooring "threw it" away from him.  The complainant testified that Mooring then threatened him with a nearby object, identified as a "bike pump."[1]  Fearing that Mooring would strike him with the object, the complainant surrendered his wallet, which contained approximately $23.00 in cash.  Mooring left with the complainant's money and his bicycle.  Afterwards, the complainant called 911.  He identified Mooring as the individual who forced his way into the apartment and threatened him with harm while stealing his property.

Mooring testified on his own behalf during the guilt/innocence phase of the trial. Mooring admitted that he had a prior felony conviction for burglary of a habitation, as well as other assorted misdemeanor convictions, and that he had been sentenced to prison as the result of previous "felony drug cases."   Mooring testified that he knew the complainant

---

[1]      The bike pump was also described as an "air pump" to inflate bicycle tires.

because one of his uncles stayed at a nearby apartment.  Mooring described the location as a "drug infested area" that was frequented by prostitutes.  Mooring testified that the complainant, who was "always outside" drinking with his friends, recognized him and welcomed him into his apartment.  Mooring admitted that he battled with "alcoholism" and "drug abuse."  Mooring explained that the complainant and his friends were always "requesting drug money" from him, suggesting that the complainant had purchased drugs from him.[2]  Mooring testified that the complainant owed him $25.00, but did not have the full amount.  Mooring told the jury that the complainant attempted to give him $7.00 in quarters, which Mooring did not accept, and then allowed him to borrow the bicycle.  Mooring denied forcing his way into the apartment and he denied making any threats against the complainant.

At the close of the guilt/evidence phase of the proceeding, the trial court issued written instructions asking the jury to determine, beyond a reasonable doubt, whether Mooring committed the offense of burglary of a habitation by intentionally or knowingly entering the complainant's residence to commit robbery.  If it could not, the jury was instructed in the alternative to consider whether Mooring was guilty, nevertheless, because there was proof beyond a reasonable doubt showing that he committed  the lesser-included offense of robbery or the lesser-included offense of theft.  The jury rejected Mooring's

---

[2]     The prosecutor objected to Mooring's suggestion that the complainant purchased drugs from him on the day of the offense.  During a hearing outside the presence of the jury, Mooring explained that he and the complainant had been snorting cocaine together and that the complainant owed him $25.00 to pay for his share of the drugs.  After listening to Mooring's account, the trial court overruled the State's objection to the testimony.  Although Mooring hinted that the complainant had purchased drugs from him, he did not present any additional testimony about the alleged drug deal during his direct testimony at trial.

version of the story and, while it acquitted him of burglary of a habitation with intent to commit robbery, it found him guilty of the lesser-included offense of robbery.

During the punishment phase of the trial, the State presented evidence that Mooring was convicted of burglary of a habitation on October 10, 1995, in Brazos County cause number 23841-05, and sentenced to ten years' imprisonment.  Mooring's sentence in that case was suspended and he was placed on probation for ten years.  Mooring's probation was revoked in that case on December 1, 1998, and he was given a six-year prison term, to run concurrent with prison sentences that Mooring received as the result of probation revocations for prior convictions in Brazos County cause numbers 19701-85, 23768-85, and 23840-85, for burglary of a motor vehicle, burglary of a habitation, and possession of a controlled substance, respectively.  The State presented evidence that, in each of those felony cases, Mooring failed repeatedly to abide by the terms and conditions of his probation.  The State also presented evidence showing that Mooring had numerous misdemeanor convictions, including those for failure to produce identification at the request of law enforcement, driving while intoxicated, evading arrest, assault, and resisting arrest.  The evidence also showed that Mooring had multiple misdemeanor convictions for criminal trespass and theft.  After hearing all of the evidence and arguments by the parties, the jury sentenced Mooring to serve sixteen years' imprisonment.

On direct appeal, Mooring complained primarily that the trial court unfairly limited his right to present a defense by restricting testimony about his prior dealings and drug usage with the complainant.  The intermediate court of appeals rejected this claim and several other

4

issues in an unpublished opinion. *See Mooring v. State*, No. 10-05-00407-CR, 2007 WL 1373884 (Tex. App. — Waco May 9, 2007). Mooring did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

Subsequently, Mooring challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure. In that application, Mooring argued that his conviction should be set aside because he was denied effective assistance of counsel at trial. The state habeas corpus court, which also presided over the trial, concluded that Mooring was not entitled to relief without entering any findings of fact. The Texas Court of Criminal Appeals agreed with the habeas corpus court's ultimate conclusion and denied relief without a written order. *See Ex parte Mooring*, No. 67,987-03 (Tex. Crim. App. April 16, 2008).

Mooring now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his state court conviction. Mooring contends that he is entitled to relief and he presents the same ineffective-assistance claims that he raised in state court. Noting that these claims were adjudicated on the merits on state habeas review, the respondent argues that Mooring is not entitled to relief under the federal habeas corpus statutes and the governing standard of review set forth below.


## II.    STANDARD OF REVIEW

Federal review of the pending habeas corpus petition is subject to the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214

(1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).

The federal habeas corpus statutes require applicants for relief to first present their claims in state court and to exhaust all state court remedies through proper adjudication.  *See* 28 U.S.C. § 2254(b).  To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA provides that a petitioner is not entitled to relief unless the state court's ultimate decision:

> (1)   was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2);  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (observing that the AEDPA standard is restricted to the reasonableness of the state court's

"ultimate decision, not every jot of its reasoning") (citation omitted).  The burden is on the petitioner to show that he is entitled to relief under the highly deferential AEDPA framework.  *See DiLosa v. Cain*, 279 F.3d 259, 262 (5th Cir. 2002).  The petitioner's claims for relief are examined below under the legal standard that governs claims of ineffective assistance of counsel on federal habeas corpus review.

## III.   DISCUSSION — INEFFECTIVE ASSISTANCE OF COUNSEL

Mooring contends that he is entitled to relief from his robbery conviction in this case because he was denied his constitutional right to the effective assistance of counsel at his trial.   The state habeas corpus court rejected all of Mooring's ineffective-assistance allegations after considering an affidavit from Mooring's appointed criminal defense counsel, Robert Neal, along with the trial record.  The Texas Court of Criminal Appeals followed suit and concluded that Mooring was not entitled to relief.

The Supreme Court has recognized that the Sixth Amendment guarantees criminal defendants the effective assistance of counsel at trial.  *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  In his supporting memorandum, Mooring argues that the state court's decision to deny relief was an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), which established the governing test for ineffective assistance of counsel.  (Doc. # 2). To warrant relief under the unreasonable-application prong of the AEDPA, 28 U.S.C. § 2254(d)(1), Mooring must show that the state court's legal application was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 411 (2000) (internal quotation marks omitted).   An objectively unreasonable decision is more than merely "erroneous or

incorrect." *Id.*  For example, a decision unreasonably applies clearly established law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08.  The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

To prevail on an ineffective-assistance claim, a defendant must establish both elements of the *Strickland* test by showing that (1) counsel's performance was deficient, such that it "fell below an objective standard of reasonableness," and (2) that the deficient representation resulted in actual prejudice.  *Strickland*, 466 U.S. at 688; *see also Williams*, 529 U.S. at 390-91 (reciting the two-prong *Strickland* test).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.  A defendant's ineffective-assistance claim fails if he cannot establish either the deficient performance or prejudice prong of the *Strickland* test.  *See Blanton v. Quarterman*, 543 F.3d 230, 235-36 (citing *Strickland*, 466 U.S. at 697).  Thus, a reviewing court need not evaluate both prongs of the *Strickland* analysis if the defendant makes an insufficient showing as to either one.  *See id.*

To establish deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  Judicial scrutiny of counsel's

performance must be "highly deferential," indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Riley v. Dretke*, 362 F.3d 302, 305 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

Even if a defendant demonstrates that his counsel's performance was deficient, he is not entitled to relief "if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To make a valid showing of ineffective-assistance, a defendant must affirmatively prove actual prejudice by demonstrating a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Id.*

In this instance, Mooring complains that his defense counsel was deficient for several reasons because he failed to object to the jury instruction on the lesser-included offense of robbery. Mooring complains that the evidence was insufficient to warrant the robbery instruction and that his counsel should have objected on this basis. Mooring complains further that the robbery instruction, as given, was defective and that his counsel failed to object to the deficiency. Mooring also complains that his counsel erred by placing too much emphasis on the robbery instruction during closing argument, rather than focusing on the instruction for the lesser-included offense of theft. In addition to his claims about the robbery instruction, Mooring argues that his attorney gave deficient advice by counseling

9

him not to testify about his drug-dealing activities or drug usage by the complainant.  Finally,

Mooring contends that his defense counsel was deficient for failing to file a pretrial motion

to quash the indictment, a pretrial motion to prevent the introduction of several prior criminal

convictions that were remote in time, and a motion for an instructed verdict to challenge the

sufficiency of the evidence in support of the robbery conviction.  These claims are examined

separately below to determine whether the state court's decision to deny relief was an

unreasonable application of *Strickland*.

### A.    Failure to Object to the Robbery Instruction

As noted above, Mooring was charged with burglary of a habitation with intent to

commit a felony, namely, robbery.  In addition to this charge, the jury instructions also

included optional provisions allowing the jury to consider the lesser-included offenses of

robbery and theft.  Mooring maintains that his counsel should have objected to the inclusion

of a jury instruction on the lesser-included offense of robbery.  In particular, Mooring argues

that the evidence was insufficient to warrant a jury instruction for this lesser-included offense

because there was no proof that he threatened the victim or placed him in fear of imminent

bodily harm.  Mooring insists, therefore, that there was insufficient proof that a robbery

occurred.

In his affidavit to the state habeas corpus court, Mooring's defense counsel opined that

any challenge to the sufficiency of the evidence would be "futile."[3]  In response to Mooring's

---

[3]     The sufficiency of the evidence to support a jury instruction is a separate issue from whether
(continued...)

10

claim concerning the robbery instruction, Mooring's counsel noted that the State's case was strong and that his client had a significant criminal record.  Mooring's counsel explained that he did not object to the instruction because he believed it prudent under the circumstances to allow the jury to consider the lesser-included offense of robbery, noting that it carried a much lower potential sentence than the charged offense:

> In his first ground, Mr. Mooring complains that I failed to object to the State's inclusion of Robbery as a lesser-included charge.  However, the record reflects that [Mooring] was indicted for Burglary of a Habitation by committing or attempting to commit Robbery, a first degree felony. . . . The underlying felony in this case, Robbery, was a second degree felony and carried a much lower minimum punishment range than the charged offense of Burglary.  Thus, including the Robbery charge gave the jury the option of convicting on a charge which was supported by the evidence, but contained a lower minimum sentence.  After speaking with Mr. Mooring and reviewing the facts and circumstances of the current case, along with his prior criminal history, I felt that giving the jury an option of the lesser included offense of Robbery was the most viable defense to the charged offense of Burglary of a Habitation.

The state habeas corpus court agreed and rejected Mooring's claim of ineffective-assistance of counsel concerning the lesser-included offense instruction on robbery.

The record refutes Mooring's claim that the robbery instruction was invalid or unwarranted by the evidence.  In Texas, "[a]n offense is a lesser-included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged."  TEX. CODE CRIM. PROC. art. 37.09.  As the Texas Court

---

[3](...continued)
there is sufficient evidence to support a guilty verdict.  Mooring's claim that his counsel failed to file a motion for instructed verdict based on the sufficiency of the evidence to support his conviction for robbery is examined separately below.

of Criminal Appeals has explained, "[a]n offense is denominated as 'lesser-included' precisely because proof of the lesser offense is 'included' in the offense described in the charging instrument." *Wasylina v. State*, 2009 WL 187831, at *1 (Tex. Crim. App. 2009). Texas law authorizes the inclusion of a lesser-included offense in the jury instructions where the following criteria are met:  (1) the lesser offense must be included within the proof necessary to establish the offense charged; and (2) there must be some evidence in the record showing that if the defendant is guilty, he is guilty of only the lesser charge.  *See Hampton v. State*, 165 S.W.3d 691, 693-94 (Tex. Crim. App. 2005) (observing that this two-prong test applies regardless of whether the instruction is requested by the State or by the defendant).

An individual commits the offense of burglary of a habitation in Texas if he enters the habitation of another person, without the owner's consent, with the intent to commit a felony or theft.  *See* TEX. PENAL CODE § 30.02.  In Mooring's case, the indictment accused him of burglary of a habitation with the intent to commit a robbery, which is a felony under Texas law.  A person commits robbery if, during the course of committing theft, he "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.  *See id*. at § 29.02(a)(2).  A  person commits theft if he "unlawfully appropriates property with intent to deprive the owner" thereof.  *Id.* at § 31.03(a).

In this case, proof of the lesser offense of robbery was included within the elements of proof needed to establish the charged offense of burglary of a habitation with intent to commit robbery.  A review of the record, which is summarized above, shows that the State presented ample evidence showing that Mooring committed robbery by intentionally or

knowingly threatening the complainant with imminent bodily injury during the course of a theft.  Accordingly, Mooring fails to show that the evidence was insufficient to warrant the jury instruction on this lesser-included offense or that his counsel was deficient for failing to raise an objection on that basis.

Moreover, a review of the applicable Texas statutes regarding the range of punishment supports the strategy adopted by Mooring's defense counsel by allowing the jury to consider lesser-included offenses.  The charged offense of burglarizing a habitation with intent to commit robbery is a first degree felony punishable by imprisonment of up to 99 years or life. *See* TEX. PENAL CODE at §§ 12.32, 30.02(d).  Robbery, by contrast, is a second degree felony that is subject to a range of 2 to 20 years' imprisonment.  *See id*. §§ 12.33, 29.02(b). Thus, by allowing an instruction on the lesser-included offense of robbery, Mooring faced a significantly reduced range of imprisonment if convicted of the second degree felony.

This record shows that defense counsel considered the strength of the State's case, as well as his client's lengthy criminal record, and made a conscious decision not to object to the jury instruction on the lesser-included offense of robbery in hopes that a conviction, if any, would result in a lower range of potential punishment.  Strategic decisions made by counsel during the course of trial are entitled to substantial deference in the hindsight of federal habeas review. *See Strickland*, 466 U.S. at 689 (emphasizing that "[j]udicial scrutiny of counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight").  The Fifth Circuit has recognized, repeatedly, that a "'conscious and informed decision on trial tactics and strategy cannot be

the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (quoting *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004)); *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'") (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999)); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.").

Mooring, who does not dispute his criminal record as a habitual offender, faced a potential life sentence if convicted of the first degree offense of burglary of a habitation with intent to commit robbery.  Mooring has not demonstrated that the evidence was insufficient to warrant a jury instruction for the lesser-included offense of robbery.  He has not otherwise alleged or tendered evidence of "concrete facts sufficient to overcome [the] presumption[]" that his counsel's decision not to object might be considered sound trial strategy.  *Moore v. Quarterman*, 534 F.3d 454, 468 (5th Cir. 2008) (quoting *West v. Johnson*, 92 F.3d 1385, 1409 (5th Cir. 1996)).  Under these circumstances, Mooring has not met his burden to demonstrate that his counsel's strategic decision to give the jury the option to consider the lesser-included offense of robbery was unreasonable.  Because Mooring has not demonstrated deficient performance on his counsel's part with respect to this issue, he has also failed to show that the state court's decision to deny relief was an unreasonable application of *Strickland*.

### B.   Failure to Object to a Defect in the Robbery Instruction

Mooring complains further that his defense counsel was deficient for failing to object to the accuracy of the jury instruction on the lesser-included offense of robbery.  Mooring notes that the offense of robbery requires a showing that the threat of bodily harm be "imminent."  *See* TEX. PENAL CODE § 29.02(a)(2).  Because the instruction given by the trial court failed to include the word "imminent," Mooring insists that his counsel was deficient for failing to object.

The record shows that paragraph one of the jury instructions recited the following elements of the primary charged offense (burglary of a habitation with intent to commit robbery).  In doing so, this paragraph also references the lesser-included offenses of robbery and theft:

> A person commits an offense if, without the effective consent of the owner, the person intentionally or knowingly enters a habitation and commits or attempts to commit robbery.

> A person commits robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

> The offense of theft is committed if a person unlawfully appropriates property with intent to deprive the owner of property.  Appropriation of property is unlawful if it is without the owner's effective consent.

*Clerk's Record*, at 32.  Assuming that the jury could not find Mooring guilty beyond a reasonable doubt of the primary charge, paragraph five contains the following alternative instruction about the lesser-included offense of robbery:

15

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of January, 2005, in Brazos County, Texas, the defendant ASHLEY MOORING, while in the course of committing theft of property, and with intent to obtain and maintain control of said property, did *intentionally or knowingly threaten bodily injury* to Juan Chivalan, then you will find the defendant guilty of the lesser-included offense of robbery.

*Clerk's Record*, at 35 (emphasis added). Because the specific instruction in paragraph five omitted the word "imminent" in reference to the threat of bodily harm, Mooring insists that the instruction was incomplete as a matter of law and that his counsel was deficient for failing to object.

Once again, the record refutes Mooring's claim. In his affidavit to the state habeas corpus court, Mooring's attorney explained that he discussed whether or not to object to the robbery instruction with his client as soon as the omission was discovered. Counsel advised Mooring that there were "pros and cons" to including the word "imminent" in paragraph five of the instructions. The State presented evidence showing that the complainant surrendered his wallet because he believed that Mooring was about to strike him with the bike pump. In light of this evidence, counsel apparently believed that including the word imminent could be helpful to the State's case. He insisted, however, that it was Mooring's decision.

The record supports the account given by Mooring's attorney. The record shows that, after the jury sent out a note asking for clarification of the robbery instruction in paragraph five, the trial court held a brief hearing on whether to insert the word imminent into that

16

instruction.[4]  *See Court Reporter's Record*, vol. 4, at 51-52.  During this hearing, counsel explained to Mooring had he had the option to object to the omission of the word imminent from paragraph five.  *See id*. at 52.  If Mooring objected to that instruction, the trial court was prepared to clarify for the jury that the threat of bodily harm had to be "imminent."  *See id*. Mooring acknowledged that he had discussed the issue with his counsel and that he had the option to object.  *See id*.  Mooring stated on the record, however, that he preferred to leave the instruction alone:

|  |  |
|---|---|
| DEFENSE COUNSEL: | Okay.  You don't want the word [imminent] to be placed in the charge? |
| THE DEFENDANT: | No. |
| DEFENSE COUNSEL: | Well, it's your decision. |

*Court Reporter's Record*, vol. 4, at 52.  Because no objection was made, the instruction outlined in paragraph five was allowed to stand.

The record confirms that Mooring's counsel discussed the potential benefits and disadvantages of the proposed change and made a conscious decision, after consulting with Mooring, to not raise an objection to the robbery instruction.  The record does not demonstrate that counsel's strategy was so ill considered as to result in fundamental unfairness here, as the record amply reflects that Mooring consented to the decision.  Under these circumstances, Mooring fails to demonstrate that his counsel's failure to object was deficient.  *See Jones*, 287 F.3d at 331.  Mooring has not shown that his counsel's

---

[4]    The jury's note is not in the record.

performance was deficient or that he was denied effective assistance of counsel on this issue and he therefore fails to establish that the state court's decision to deny relief was unreasonable under *Strickland*.

### C.    Counsel's Closing Argument

Complaining further about the robbery instruction, Mooring faults his counsel's decision to focus his closing argument on the lesser-included offense of robbery. Mooring maintains that, because the evidence was only sufficient to prove the commission of a theft, his counsel's strategy was deficient.

In his affidavit to the state habeas corpus court, Mooring's counsel explained that he tailored his closing argument as he did to avoid insulting the jury and damaging his credibility:

> Mr. Mooring next complains that I placed too much emphasis in the final argument on the lesser-included offense of Robbery, rather than the lesser-included offense of theft. This is because I felt that, after the jury heard the testimony of the victim, Juan [Chivalan], as well as the prior criminal history of Mr. Mooring, it [would be] hard for the jury to believe that only a misdemeanor theft occurred. Thus, I felt that arguing that he should simply be convicted of theft would reduce our credibility with the jury and could possibly hurt [Mooring] in both guilt/innocence and punishment.

Decisions respecting closing argument, like many of other decisions by counsel, are a matter of trial strategy. *See United States v. Igbinosun*, 528 F.3d 387, 391 (5th Cir. 2008) (quoting *United States v. Martinez*, 974 F.2d 589, 590 (5th Cir. 1992)). A review of the record shows that defense counsel's closing argument was thorough, cogent, and capably presented. In light of the evidence against him, Mooring does not show that counsel's strategy was so

unwise as to result in actual prejudice.  *See Kitchens v. Johnson*, 190 F.3d 698, 704 (5th Cir. 1999) (citing *Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997) ("counsel may make strategic decisions to acknowledge the defendant's culpability and may even concede that the jury would be justified in imposing the death penalty, in order to establish credibility with the jury")).  Under the deferential standard by which counsel's actions at trial are judged, Mooring has not established that his counsel's conduct fell outside the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689.  It follows that he fails to demonstrate that the state court's decision to deny relief was unreasonable or that he is otherwise entitled to relief on this issue.

### D.      Testimony About Drug Dealing and Drug Use by the Complainant

Mooring argues further that his counsel's performance was deficient because he advised Mooring not to testify, during his direct examination, about his drug dealing activities and the complainant's drug use.  This claim is without merit.

The record shows that Mooring started to testify that the complainant allowed him to enter his home for the purpose of selling him drugs.  The State objected, initially, on the grounds that the evidence violated Rule 608(b) of the Texas Rules of Evidence, because it concerned a specific instance of misconduct by the complainant.[5]  In a hearing outside the presence of the jury, Mooring offered his account of the incident for the trial court's

---

[5]     Rule 608(b) of the Texas Rules of Evidence limits the use of evidence for purposes of attacking the credibility of a witness.  In particular, Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."

consideration.  In that hearing, Mooring testified that the complainant invited him into his apartment on the day in question, that Mooring sold him some cocaine, and that the complainant owed him $25.00 for cocaine that he snorted, but that he did not have enough money.  The trial court overruled the State's objection and held that Mooring could present testimony about his alleged drug deal with the complainant.  Mooring complains, however, that his counsel advised him not to present any additional testimony before the jury about the alleged drug deal that purportedly precipitated his encounter with the complainant.

As the respondent notes, Mooring fails to show that it would have benefitted his defense to introduce evidence during the guilt/innocence phase of the trial showing that Mooring was a drug dealer attempting to collect a drug debt.  Counsel is not deficient for deciding not to present "double-edged" evidence.  *See Johnson v. Cockrell*, 306 F.3d 249, 253 (5th Cir. 2002); *see also Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) (observing that "a tactical decision not to pursue and present potential mitigating evidence on the grounds that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient performance") (citing *Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994)). If counsel had elicited the proposed testimony during his client's direct examination, it could have opened the door to more damaging evidence under cross-examination by the prosecutor. Under these circumstances, Mooring fails to establish that his counsel's performance was deficient or that he was prejudiced as a result.  *See Williams v. Collins*, 16 F.3d 626, 632 (5th Cir. 1994);  *see also Williams v. Cain*, 125 F.3d 269, 278 (5th Cir.1997) (observing that failure to present evidence does "not constitute 'deficient' performance within the meaning

20

of [*Strickland v. Washington*] if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise"). He likewise fails to show that the state court's decision to reject this claim was unreasonable.

### E.      Failure to File a Pretrial Motion to Quash

Mooring contends that his defense counsel was deficient for failing to file a motion to quash the indictment. Mooring complains that the indictment was defective because it failed to include the elements of the lesser-included offense of robbery. Mooring fails to demonstrate, however, that the elements of the lesser-included offense were required to be listed in the charging instrument as a matter of Texas law. In Texas, however, it is well established that an indictment which charges one offense during the commission of another does not need to allege each element of the lesser-included offense. *See Demouchette v. State*, 591 S.W.2d 488, 490 (Tex. Crim. App. 1979); *Davila v. State*, 547 S.W.2d 606, 608-09 (Tex. Crim. App. 1977). Thus, as the respondent correctly notes, Mooring fails to show that his indictment was defective or that a motion to quash, if filed, would have been granted.[6]

Absent a showing that counsel failed to file a meritorious motion and that the outcome would have been different, the petitioner fails to demonstrate deficient performance or actual prejudice. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (holding that counsel

---

[6]      In addition, as the respondent correctly observes, if Mooring had objected to the indictment, there is no reason to believe that the State would not have sought an amendment or reindictment to correct the error, if any. Under these circumstances, Mooring does not show that his counsel's failure to file a motion was unreasonable. *See Brown v. Cain*, 337 F.3d 546, 549-50 (5th Cir. 2003) (finding no ineffective assistance of counsel for failure to file a motion to quash the indictment, where the effect of a successful motion would have simply caused the State to obtain a second indictment to correct the error).

21

was not deficient in failing to present a meritless argument) (citation omitted);  *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988) ("Counsel cannot be faulted for failing to pursue meritless motions.") (citations omitted); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.").  It follows that Mooring establishes neither the requisite deficient performance nor actual prejudice for purposes of making a valid ineffective-assistance claim.  Accordingly, Mooring fails to show that the state court's decision to deny relief was unreasonable under *Strickland*.

### F.    Failure to Prevent Evidence of Remote Prior Convictions

Mooring contends that his defense counsel was deficient for failing to file a pretrial motion to prevent the introduction of several prior criminal convictions that were remote in time.  Mooring complains that these prior convictions were admitted improperly and considered by the jury for purposes of determining his punishment.  The record refutes Mooring's claims.

Rule 609(b) of the Texas Rules of Evidence precludes evidence of a conviction for purposes of impeachment "if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."  The record shows that Mooring's counsel filed a motion

22

in limine to restrict the admission of evidence of prior convictions that were so remote as to be inadmissible under Rule 609(b). *See Clerk's Record*, at 8, 25. The trial court granted that motion. *See id*. at 28. Thus, Mooring fails to show that his counsel was deficient for failing to file a motion to exclude these convictions for purposes of impeachment during the guilt/innocence portion of the trial.

Mooring fails to show that the State impeached him improperly with a stale conviction in violation of Rule 609(b) or that his counsel had a valid objection to make.[7] Likewise, Mooring fails to show that any of his prior convictions were admitted improperly as evidence during the punishment phase of trial.[8] *See* TEX. CODE CRIM. PROC. art. 37.07, § 3(a)(1) (authorizing the admission of evidence for purposes of punishment during the penalty phase of trial, including but not limited to evidence of the defendant's "prior criminal record"). Mooring fails to demonstrate deficient performance on his counsel's part.

---

[7]  Notably, Mooring elected to testify at the guilt/innocence phase of the trial and, in anticipation of cross-examination, he disclosed much of his criminal record during his direct examination. On state habeas corpus review, Mooring's counsel explained that he discussed the "pros and cons of admitting his prior convictions before the State did and advised him that the greatest chance to mitigate the punishment the jury would assess would be to admit to the prior felony convictions before the State introduced them to impeach Mr. Mooring." The trial court held a hearing on the issue of Mooring's prior convictions, outside of the jury's presence, prior to Mooring's testimony. *See Court Reporter's Record*, vol. 3, at 75-77. During that hearing, Mooring acknowledged that his counsel had discussed the possibility that the State could impeach him with his criminal record and that he understood the rules of evidence, specifically Rule 609, regarding his prior convictions. *Id.* at 76. Mooring stated further that he understood the "risks and dangers" of testifying and that it was his decision to do so. *Id.* at 76-77.

[8]  The relevant judgments are included among the trial exhibits. *See Court Reporter's Record*, vol. 6.

### G.     Failure to File a Motion to Challenge the Sufficiency of the Evidence

Mooring argues further that the evidence was insufficient to support his robbery conviction because there was no proof that he threatened the victim or placed him in fear of imminent bodily harm.  Mooring maintains, therefore, that his counsel's decision not to object or file a motion for an instructed verdict was not reasonable and resulted in actual prejudice because, at most, the evidence only supported a conviction for theft.

In response to this allegation, defense counsel explained that he did not object or file a motion for an instructed verdict based on the insufficiency of the evidence because he believed "it would be futile."  The record supports defense counsel's conclusion.  In that respect, the evidence presented at trial, which is summarized above, showed that Mooring intentionally or knowingly threatened or placed the complainant in fear of imminent bodily injury by brandishing the bike pump while demanding money.  This is sufficient to support a robbery conviction as that offense is defined in § 29.02 of the Texas Penal Code.  *See Jackson v. Virginia*, 443 U.S. 307 (1979) (providing that the evidence is sufficient if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Based on this record, Mooring fails to show that his counsel was deficient for failing to file an objection or motion to challenge the sufficiency of the evidence.  Because Mooring does not establish a valid claim for ineffective assistance of counsel on this issue, he does not show that the state court's decision to deny relief was unreasonable.

## IV.     CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the AEDPA, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed. *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right.  Therefore, a certificate of appealability will not issue.

## V.  CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.  The respondent's motion for summary judgment (Doc. # 10) is **GRANTED**.

2.  The petition for a writ of habeas corpus (Doc. # 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

3.  A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, on <u>March 16</u>, 2009.

Nancy F. Atlas
United States District Judge